[Civ. No. 19046. First Dist., Div. One. Dec. 19, 1960.]

MARGARET Y. GORDON, Individually and as Administratrix, etc., Appellant, v. W. C. REYNOLDS et al., Respondents.

J. Adrian Palmquist and Francis T. Cornish for Appellant.

Kirkbride, Wilson, Harzfeld & Wallace, David Livingston and Peter F. Sloss for Respondents.

DUNIWAY, J.—Plaintiffs appeal from a judgment which adjudges that the court has no jurisdiction of the subject matter of the first cause of action of their second amended complaint or of the amendment thereto, which adds a third cause of action. We find that the judgment is correct.

Plaintiffs are Margaret Y. Gordon individually and Margaret Y. Gordon as administratrix of the estate of Donald B. Gordon, deceased. In her individual capacity Mrs. Gordon sues for her own personal injuries, in the second cause of action only. That cause of action was not passed upon by the trial court, and the action is still pending between her and the defendants. Her appeal, as an individual, on that cause of action, must therefore be dismissed.

In her capacity as administratrix, she sues for the wrongful death of her husband. Although she is also referred to as a plaintiff in her individual capacity in the first cause of action and in the third (which was added by amendment), these being the causes of action for wrongful death, the sole

proper plaintiff is Mrs. Gordon as administratrix. Either the administratrix or the heirs, but not both, may sue, and if the administratrix sues, the heirs may not. (Code Civ. Proc., § 377; 55 Cal.Jur.2d, § 21, p. 416.) Thus the judgment, which relates solely to those causes of action, finally disposes of the litigation as between the administratrix and the defendants.

The two causes of action that are before us show that Mr. and Mrs. Gordon were riding in an airplane owned by defendant Reynolds and piloted by Duncan, of whose will the defendant bank is executor. The plane was landed in the Pacific Ocean, and Gordon and Mr. and Mrs. Duncan were killed, by drowning, Mrs. Gordon being the sole survivor. Each cause of action charges wilful misconduct. The first alleges that the pilot ''became lost at a location over the Pacific Ocean approximately seven miles southwest of Cape San Martin light, on the State of California coast line; that as a direct and proximate result . . . Duncan . . . violently crash landed said airplane into the waters of the Pacific Ocean . . .'' The third alleges that the crash was ''near'' Cape San Martin in the county of Monterey, and that plaintiffs do not know whether the death occurred within or outside the coastal waters of California. The answers ''admit the allegations of the first count that the airplane . . . was ditched and lost at a location in the Pacific Ocean approximately seven miles southwest of Cape San Martin Light,'' and also plead lack of jurisdiction of the subject matter.

The pretrial order recites a prior order that the defense of lack of jurisdiction be first tried, and orders trial of that issue before the court. No objection to the order appears, nor was anything done to obtain a modification pursuant to rule 8.7(b), Rules of the Judicial Council for the Superior Courts. However, plaintiffs' pretrial statement states that plaintiffs demand a jury and estimates that the trial will last ''at least three weeks.'' When the trial of the issue of jurisdiction began, counsel for plaintiffs objected on the ground that a jury was demanded. The court followed the pretrial order. After hearing certain testimony, it held that it had no jurisdiction. It found, ''in accordance with the allegations . . . of the first . . . cause of action . . . and the admissions in the answers of defendants . . . and on the basis of the evidence . . . that . . . [the accident] occurred . . . seven miles distant from Cape San Martin Light at a bearing of 200° true, i.e.,

southwest . . . and more than one marine league from the nearest point of the shore line . . .''

Appellant contends:

1. That she should have had a jury trial on the issue of jurisdiction.

2. That even though the accident occurred outside the so-called 3-mile limit, she can still recover if wrongful acts that proximately caused the death occurred in California.

3. That the federal Death on the High Seas Act does not deprive the court of jurisdiction.

### 1. *The question of jury trial.*

The court below, in its finding, recites that no objection was made to the pretrial orders, and that jury trial of the issue of jurisdiction was waived by both parties. Under rule 8.8, the pretrial order controls the subsequent course of the case. (*Cf. Baird* v. *Hodson,* 161 Cal.App.2d 687 [327 P.2d 215] ; *Dell 'Orto* v. *Dell 'Orto,* 166 Cal.App.2d 825 [334 P.2d 97] ; *Wiese* v. *Rainville,* 173 Cal.App.2d 496, 508 [343 P.2d 643] ; *Greenberg* v. *Bank of America,* 175 Cal.App.2d 664 [346 P.2d 848] ; *Cal-Neva Lodge, Inc.* v. *Marx,* 178 Cal. App.2d 186 [2 Cal.Rptr. 889] ; *Fitzsimmons* v. *Jones,* 179 Cal. App.2d 5 [3 Cal.Rptr. 373] ; *Security Ins. Co.* v. *Snyder-Lynch Motors,* 183 Cal.App.2d 574 [7 Cal.Rptr. 28].) While none of these cases deals with waiver of jury, they all stand for the proposition that the parties and the court are entitled to rely on the pretrial order in going to trial. We think that, assuming that appellant had a right to have the issue of jurisdiction tried by a jury, it was incumbent upon her to object at the pretrial and, if the pretrial order failed to show her objection, to move for a modification. Not having done so, she waived whatever right she had. We need not decide whether the issue was one that she would have had the right to have tried by a jury.

Again, assuming the right to a jury, appellant was not prejudiced, because the evidence establishes, without substantial conflict, that the plane fell into the sea outside the 3-mile limit; a contrary verdict would be without evidentiary support. There was direct, detailed, and positive testimony of three disinterested witnesses, personnel of a Navy vessel near which the plane landed, that the place was well outside the 3-mile limit. Plaintiff herself in her verified petition for letters of administration, alleged that the place was 7 miles off the coast.

As against this evidence, there is only the testimony of plaintiff, which is not substantial evidence (*Walters* v. *Bank of America,* 9 Cal.2d 46 [69 P.2d 839, 110 A.L.R. 1259]). She testified that the plane hit the water between the shore and the ship, in front of the ship; quite a distance from it, a mile or more. She could see a dark outline "which I took to be the shore." Her eyesight is not good, and she did not have her glasses on; there was a ceiling of 100 feet. The plane was "possibly half again the distance from the shore, as I was from the ship." It was dark, and raining. She was "no judge of distance." This evidence does not rise to the dignity of substantiality. It would not support a finding that the. plane was within the "three mile limit." Consequently appellant was not prejudiced by the denial of her claimed right to a jury determination. (*Pacific Western Oil Co.* v. *Bern Oil Co.,* 13 Cal.2d 60 [87 P.2d 1045], and *cf. Bank of America* v. *Oil Well S. Co.,* 12 Cal.App.2d 265 [55 P.2d 885].)

We therefore need not pass upon the executor's contention that, because it was not shown that the events testified to by appellant occurred after the death of Duncan, the foregoing evidence was not admissible against the executor under Code of Civil Procedure, section 1880, subdivision 3.

2. *The questions of jurisdiction.*

▉ The action is for wrongful death—a cause of action created by statute (Code Civ. Proc., § 377; *Grant* v. *McAuliffe,* 41 Cal.2d 859, 864 [264 P.2d 944, 42 A.L.R.2d 1162]). Appellant's counsel concedes that if both the accident and the events leading up to it and being proximate causes of it occurred outside California, Code of Civil Procedure, section 377, would not apply. "All legislation is *prima facie* territorial." (Holmes, J., in *American Banana Co.* v. *United Fruit Co.,* 213 U.S. 347, 357 [29 S.Ct. 511, 53 L.Ed. 826]; and see *Ryan* v. *North Alaska Salmon Co.,* 153 Cal. 438 [95 P. 862].)

Counsel's contention is that certain acts which caused the accident, and therefore the death, occurred in California, and that Code of Civil Procedure, section 377, is thereby brought into play. It appears that the parties began their fatal flight at Riverside, and decided, because of bad weather, to go no farther than Los Angeles. However, when they were over Los Angeles, Duncan refused to land, although asked to do so. This is what we will call "proximate cause No. 1." He was also asked to land at Santa Barbara, but refused—"proxi-

mate cause No. 2.'' A similar event occurred over the Hearst field at San Simeon—''proximate cause No. 3.'' Thereafter, Duncan almost collided with a lighthouse, climbed to avoid a collision, to about 7,000 feet, made a circling descent to about 100 feet above the sea, circled the Navy ship, had Gordon signal to it by flashlight, and ditched. These appellant lumps together as what we will call ''proximate cause No. 4.''

At oral argument, counsel virtually conceded that causes Numbers 1, 2 and 3 can hardly be called ''proximate.'' They are events, like Duncan's birth, ''but for which'' the accident would not have happened, but are hardly ''proximate'' causes. Counsel asserts that proximate causation began when the plane first missed the lighthouse and started up. This may be so, but it is also true that at that point no one was hurt. The first time that any ''cause,'' whether ''proximate'' or not, produced injury was when the plane hit the water. Had there been no ditching, no physical injuries, and no death, no cause of action for wrongful death would have existed. It is not wrongful conduct, but injury caused by wrongful conduct, that gives rise to a cause of action.

No doubt this is one reason why the Restatement says: ''The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place.'' (Rest., Conflict of Laws, § 377.) The note following the comment to this section states: ''. . . when a person sustains bodily harm the place of wrong is the place where the harmful force takes effect upon the body. Such a force is first set in motion by some human being. It is quite immaterial in what state he set the force in motion. . . .'' And section 391 of the Restatement makes it clear that these principles apply to actions for wrongful death. Comment c. to that section states: ''The statute of the forum does not create a right of action for death if the injury to the decedent was inflicted elsewhere.'' We find nothing in Code of Civil Procedure, section 377, indicating that it was intended to have any extraterritorial effect. (See *Armstrong* v. *Beadle*, F. Cas. No. 541 [5 Sawy. 484].)

█ It can be argued that the federal Death on the High Seas Act (46 U.S.C. §§ 761-768) gives plaintiff a cause of action (we agree) and that the California courts have jurisdiction of that cause of action (we think not). The federal statute (§ 761) states: ''. . . the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty . . .''

Like the California wrongful death statute as it applies within California, this statute created, in the exercise of the plenary powers of Congress, a new substantive cause of action for death on the high seas. (*Higa* v. *Transocean Airlines* (C.A. 9), 230 F.2d 780; *D'Aleman* v. *Pan American World Airways* (C.A. 2), 259 F.2d 493; *Echavarria* v. *Atlantic & Caribbean Steam Nav. Co.* (D.C. N.Y.), 10 F. Supp. 677; *Sierra* v. *Pan American World Airways*, 107 F. Supp. 519; *Wilson* v. *Transocean Airlines* (D.C. Cal.), 121 F. Supp. 85; *Noel* v. *Linea Aeropostal Venezolana* (D.C. N.Y.), 144 F. Supp. 359; *Elliott* v. *Steinfeldt*, 254 App. Div. 739 [4 N.Y.S. 2d 9]; and *cf. Steamer Harrisburg* v. *Rickards*, 119 U.S. 199 [7 S.Ct. 140, 30 L.Ed. 358].) Several of the foregoing cases indicate that the statute also supersedes state statutes creating a cause of action for wrongful death on the high seas. This is a question with which we are not concerned, because we have already held that the California statute does not create such a cause of action.

Does the California court have jurisdiction to enforce the federally created right? Section 767 of the federal act provides: "The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter." The section is of no help to appellant, for two reasons. First, as we have seen, Code of Civil Procedure, section 377, does not give or regulate any right of action or remedy for the death here involved. Second, the jurisdiction of the federal court, over the federal cause of action, is exclusive. The answer might well be different if the injury had occurred within the 3-mile limit, where Code of Civil Procedure, section 377, would clearly be operative, but that question is not before us. (*Cf. Lindgren* v. *United States*, 281 U.S. 38 [50 S.Ct. 207, 74 L.Ed. 686]; *Spencer Kellogg & Sons, Inc.* v. *Hicks*, 285 U.S. 502 [52 S.Ct. 450, 76 L.Ed. 903]; *Just* v. *Chambers*, 312 U.S. 383 [61 S.Ct. 687, 85 L.Ed. 903]; *The Tungus* v. *Skovgaard*, 358 U.S. 588 [79 S.Ct. 503, 3 L.Ed.2d 524, 71 A.L.R.2d 1280].) In the Higa case, cited *supra*, the Court of Appeals for the Ninth Circuit held (230 F.2d 786): " 'Where the statute creating the right provides an exclusive remedy, to be enforced in a particular way, or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created the right.' " The rule is peculiarly applicable to the present statute, which provides for a remedy "in admiralty," since federal jurisdiction in admiralty is "exclusive of the courts of the States." (28 U.S.C. § 1333.) To the

effect that the remedy in admiralty is exclusive see: *Iafrate* v. *Compagnie Generale Transatlantique* (D.C. N.Y.), 106 F. Supp. 619; *Higa* v. *Transocean Airlines, supra,* 230 F.2d 780; *Trihey* v. *Transocean Air Lines* (C.A. 9), 255 F.2d 824; *Noel* v. *Linea Aeropostal Venezolana* (C.A. 2), 247 F.2d 677. The so-called "saving to suitors" clause in section 1333 ("saving to suitors in all cases all other remedies to which they are otherwise entitled") is of no help to appellant. There is no other remedy to which she is otherwise entitled.

Our conclusions are in accord with those of District Judge Goodman, in his detailed and carefully reasoned opinion in *Wilson* v. *Transocean Airlines, supra,* 121 F. Supp. 85. As he there points out, the locality test of admiralty tort jurisdiction is similar to that which we are applying so far as applicability of the California statute is concerned—namely, "the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action." (P. 92. See also *Lacey* v. *L. W. Wiggins Airways, Inc.* (D.C. Mass.), 95 F. Supp. 916.) We think, too, that our decision is in line with the principles laid down by the United States Supreme Court in *Southern Pacific Co.* v. *Jensen,* 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086]: the doctrine that state statutes cannot interfere with the essential uniformity of the maritime law.

Insofar as *Elliott* v. *Steinfeldt, supra,* 4 N.Y.S.2d 9, and *Sierra* v. *Pan American World Airways, supra,* 107 F. Supp. 519, are to the contrary in holding that a state court has concurrent jurisdiction with the federal court where the death occurred on the high seas and not within the territorial waters of the state, we decline to follow them. We note that the New York courts had held, contrary to our decision in this case as to our statute, that the New York wrongful death statute did apply, before the federal act, to death on the high seas. (*McDonald* v. *Mallory,* 77 N.Y. 546 [33 Am.Rep. 664].) This may be an "unspoken major premise" in the Elliott case. *Sierra* relies principally upon *Elliott.*

The appeal of Margaret Y. Gordon individually is dismissed. The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1961. Traynor, J., was of the opinion that the petition should be granted.